IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CONTINENTAL INSURANCE )
COMPANY, et al. )
) NO. 3:12-0433
v. ) JUDGE CAMPBELL
)
UNITED STATES OF AMERICA )

MEMORANDUM

Pending before the Court is Defendant's Motion to Dismiss (Docket No. 46). The Court heard argument on Defendant's Motion on February 13, 2013. For the reasons stated herein, Defendant's Motion is GRANTED, and this action is DISMISSED.

FACTS

Plaintiffs allege that they sustained property damage as a result of the historic May 2010 Cumberland River flood and that Defendant, through the U.S. Corps of Engineers and the National Weather Service, caused their injuries by their actions and inactions related to Old Hickory Dam. Plaintiffs' Complaint is brought pursuant to the Federal Tort Claims Act ("FTCA") and asserts claims of negligence, gross negligence, trespass to chattel and private nuisance.

Defendant has moved to dismiss this action for lack of subject matter jurisdiction, arguing that the United States is immune from Plaintiffs' claims under the Flood Control Act ("FCA"), specifically 33 U.S.C. § 702c. Defendant also contends that its actions at issue herein fall within the "discretionary function" exception and the "misrepresentation" exception to the FTCA. In addition, Defendant claims that it had no duty to operate a hydroelectric or navigational dam to

control flooding under Tennessee law, and that the Court lacks subject matter jurisdiction under the admiralty statutes.

Plaintiffs have agreed that the Court has no subject matter jurisdiction under the admiralty statutes, and any claims based upon admiralty law are DISMISSED.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## FLOOD CONTROL ACT

The FCA, enacted in 1928, provides, among other things: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c. The initial question on this Motion is whether Defendant is immune from liability for Plaintiffs' claims pursuant to this statute.

Plaintiffs argue that the immunity provision applies only to claims involving flood control projects and Old Hickory Dam is not a flood control project. Plaintiffs rely upon *United States v. James* 106 S.Ct. 3116 (1986), among other things, to argue this position. *James* involved the deaths of recreational boaters who drowned when they were swept through discharge points of reservoirs on federal flood control projects after discharge gates were opened to alleviate potential flooding. The principal issue in *James* was whether the statutory word "damage" encompassed not just property damage, but also personal injuries and death. *See Central Green v. United States,* 121 S.Ct. 1005, 1008 (2001).

The Supreme Court held that the government was entitled to immunity, notwithstanding that the injuries arose from government employees' alleged mismanagement of the recreational activities on the project. The Court stated: "It is thus clear from § 702c's plain language that the terms 'flood' and 'flood waters' apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *James*, 106 S.Ct. at 3121. There was no dispute in *James* that the facilities at issue were flood control projects. *Id*. at 3118.

More recently, the Supreme Court has reviewed this immunity provision in connection with water flooding from a federally owned canal. *Central Green Co. v. United States*, 121 S.Ct. 1005 (2001). In *Central Green*, the Court characterized its holding in *James* this way: "In *James*, we held that the phrase 'floods or flood waters' is not narrowly confined to those waters that a federal project is unable to control, and that it encompasses waters that are released for flood control purposes when reservoired waters are at flood stage." *Id*. at 1009.

Noting that the text of the statute does not include the words "flood control project," the Court held that to determine the scope of the immunity conferred, courts should look to the character of the waters that cause the relevant damage and the purposes behind their release, not to the character of the federal project or the purposes it serves. *Id*. at 1010-1011. The *Central Green* Court noted that it "is relatively easy to determine that a particular release of water that has reached flood stage is 'flood water,' . . . or that a release directed by a power company for the commercial purpose of generating electricity is not." *Id*. at 1012.

In later litigation related to Hurricane Katrina, the Fifth Circuit Court of Appeals held that under the *Central Green* test, "the government enjoys immunity only from damages caused by flood waters released on account of flood-control activity or negligence therein." *In re Katrina Canal Breaches Litigation*, 696 F.3d 436, 444 (5th Cir. 2012). "Thus, after *Central Green*, waters have the immune character of 'flood waters' if the government's link to the waters is through flood-control activity. That is to say, the government's acting upon waters for the purpose of flood control is flood-control activity, and flood-control activity is what gives waters an immune character." *Id*. at 466. The *Katrina* opinion goes on to state: "We recognize immunity for any flood-control activity engaged in by the government, even in the context of a project that was not primarily or substantially related to flood control." *Id*. at 447.

Plaintiffs contend that Old Hickory Dam is not a "flood control project" and, therefore, Section 702c does not apply. As the Supreme Court noted, however, the words "flood control project" do not appear in the statute. Moreover, the statute provides immunity for injuries "at any place." The Supreme Court, in *Central Green,* has directed the lower courts to look at the character of the waters, not the relation of the waters to the project. The Fifth Circuit has also recognized

4

immunity for flood-control activity even in the context of a project that is not primarily or substantially related to flood control.

Here, even if Old Hickory Dam is not characterized as a "flood control project," the Court finds that the alleged misconduct was flood control activity involving flood waters. Plaintiff notes that the surcharge pool at Old Hickory Dam is used during periods of "Flood Regulation" and states that during periods of "Flood Regulation," all other operating objectives of the Cumberland River projects, including hydropower, become secondary considerations. Complaint (Docket No.1), ¶ 58. Plaintiffs claim that the "Flood Regulation" instructions for Old Hickory Reservoir provide that surcharge pool storage should not be used until just prior to the *peak of the flood* to maximize reduction of the peak overflow from the project. *Id*., ¶ 57. Plaintiffs also contend that during *periods of flooding*, the National Weather Service and Corps of Engineers are required to maintain close contact to keep all informed as to *flood control strategy. Id*., ¶ 73

Plaintiffs aver that one of the directives which Defendant allegedly failed to obey was the Old Hickory Water Control Manual directive that says "releases greater than 'natural' flows should be made *at the onset of a flood* to conserve storage for the peak" Docket No. 57, p. 6 (emphasis added). The Plaintiffs allege that Defendant was negligent in responding to the impending flood. For example, Plaintiffs contend that despite Defendant's knowledge of the forecasted rainfall, the Corps of Engineers did not implement "Flood Regulation" instructions. Complaint, ¶ 90. Plaintiffs also allege that the Corps of Engineers breached its duty to preserve the surcharge pool for the "peak of the flood." *Id.*, ¶131.

Plaintiffs claim that Defendant negligently responded or failed to respond to a "forecasted historic storm event," but nothing about that characterization (as opposed to calling it a "flood")

5

changes the fact that the character of the waters at issue herein was "flood waters" and the alleged actions and inactions were flood control efforts. Moreover, Plaintiffs' claim that Defendant's negligence was *before* the flood does not change the fact that Plaintiffs' damage was "from or by floods or flood waters."

The Court finds that the immunity granted to the United States by the Flood Control Act applies to bar Plaintiffs' claims herein. Looking at the character of the waters, as alleged in Plaintiffs' Complaint, and following the guidance set forth in *Central Green*, the Court finds that Plaintiffs' injury was caused by "floods or flood waters at any place." 33 U.S.C. § 702c. Accordingly, Defendant's Motion to Dismiss is granted based upon the immunity statute of the Flood Control Act.

## FEDERAL TORT CLAIMS ACT

Alternatively, the Court will address Defendant's argument that Plaintiffs' claims are barred by the "discretionary function" exception to the FTCA. The FTCA states that its provisions shall not apply to any claim based upon the exercise or failure to exercise a discretionary function or duty on the part of a federal agency or an employee of the Government. 28 U.S.C. § 2680(a). The parties herein dispute whether the alleged misconduct was discretionary.

The exception covers only acts that are discretionary in nature, acts that involve an element of judgment or choice. *United States v. Gaubert*, 111 S.Ct. 1267, 1273 (1991). It is the nature of the conduct, rather than the status of the actor that governs whether the exception applies. *Id*. In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. *Berkovitz v. United States*, 108 S.Ct. 1954, 1958 (1988).

The requirement of judgment or choice is not satisfied if a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive. *Gaubert*, 111 S.Ct. at 1273; *see also In re Katrina Canal Breaches Litigation*, 696 F.3d 436, 449 (5th Cir. 2012).

In addition, the discretionary function exception protects only governmental actions and decisions based on considerations of public policy. *Katrina,* 696 F.3d at 449. When established governmental policy, as expressed or implied by statute, regulation or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. *Gaubert*, 111 S.Ct. at 1274. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis. *Id*. at 1275. For the government to fall within the discretionary function exception, the deciding agent need not have actually considered any policy implications; instead, the decision must only be susceptible to policy analysis. *Katrina*, 696 F.3d at 451.

The conduct challenged in this case is the Defendant's operation of Old Hickory Dam in the days leading up to and during the May 2010 floods. So the question is whether Defendant's actions and failures to act, with regard to preparing for and responding to the storm, were discretionary.

Plaintiffs argue that the Defendant had a mandatory duty to preserve adequate surcharge capacity and that the Corps of Engineers' manual directed employees how to preserve that storage. Plaintiffs claim that because of these mandatory provisions, Defendant had no choice or judgment in what it was required to do.

Defendant, on the other hand, contends that even if it had a duty to preserve adequate surcharge capacity, its decisions concerning the water levels of the reservoir and the timing and quantity of releases were committed to the discretion of the Corps of Engineers. Plaintiffs challenge both when and how Defendant released the flood waters, and Defendant argues that it made discretionary decisions concerning those actions. Defendant argues that, especially given the dynamic and uncertain nature of weather, the Corps of Engineers employees have to have discretion to make adjustments and quick decisions as weather develops.

Plaintiffs point to a provision in the Cumberland River Basin Water Control Manual, which states: "It is necessary . . . to operate [the Basin's run-of-river] projects in a way to mitigate the loss of the natural valley storage in the reservoir areas during times of floods." Docket No. 57, pp. 35-36. Plaintiffs assert that this provision creates a mandatory, non-discretionary directive to preserve Old Hickory Dam's surcharge storage capacity. Even if that is true, however, the Corps of Engineers is not directed specifically *how and when* to perform the various tasks which cause it to operate its project in a way to mitigate the loss of storage in times of floods.

Plaintiffs also contend that a specific operating rule and standing instruction require Corps of Engineer employees to maintain the water surface elevation within the hydropower pool limits (elevation 442 to 445). Plaintiffs argue that the Corps of Engineers' water manuals direct employees as to how to preserve the storage by stating that employees "should" make pre-flood drawdown releases from the reservoir to conserve storage for the peak of the storm and that surcharge storage and any additional storage that can be gained by preflood drawdown should be preserved until it is clearly evident that the storm has passed.

8

In addition to reinforcing the argument that the alleged misconduct involved flood control activities and flood waters, these provisions are still general directives as to the goals to be achieved, and employees maintain discretion as to how and when these directives are to be implemented. Corps of Engineer employees have to consider multiple policy objectives in determining how and when to implement the general directives.

Plaintiffs maintain that the decisions made by Defendant's employees were merely scientific and mathematical calculations which require no discretion. If the government's discretion is grounded in the policy of the regulatory regime, the decision is immune under the discretionary function exception even if it also may entail application of scientific principles. *Katrina*, 696 F.3d at 451.

Thus, even if this case is not barred by the Flood Control Act, the Court finds that Plaintiffs' claims against Defendant in this action are barred by the discretionary function exception to the Federal Tort Claims Act and, therefore, should be dismissed.

## CONCLUSION

For all these reasons, Defendant's Motion to Dismiss (Docket No.28) is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE